UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID ROGER ALBERTSON,

     Plaintiff,

v.                                             CASE NO. 8:12-cv-2034-T-30MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

     Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* action for review of the administrative denial of disability insurance benefits (DIB). *See* 42 U.S.C. § 405(g). Plaintiff contends that the Administrative Law Judge (ALJ) failed to properly evaluate Plaintiff's residual functional capacity (RFC) and improperly determined at step five that there were significant employment opportunities available to Plaintiff in the national economy. Plaintiff also argues that the Court should remand the case due to new and material evidence. After considering the parties' briefs[1] and the administrative record, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

    *A. Standard of Review*

To be entitled to disability insurance benefits, a claimant must be unable to engage

---

[1] The Court acknowledges that Plaintiff filed a reply brief to the Commissioner's memorandum. *See* doc. 19. Nonetheless, Plaintiff failed to seek leave of Court before filing his reply in violation of Local Rule 3.01(c); therefore, the Court will not address any arguments set forth in Plaintiff's reply. *See* M.D. Fla. R. 3.01(c).

in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 404.1520. A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137 (1987); 20 C.F.R. § 404.1520(f).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389 (1971). The

2

ALJ's factual findings are conclusive if "substantial evidence" consisting of "relevant evidence as a reasonable person would accept as adequate to support a conclusion" exists. *See* 42 U.S.C. § 405(g); *Keeton v. Dept. of Health and Human Servs.*, 21 F.3d 1064 (11th Cir. 1994). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Further, the Commissioner's failure to apply the correct law or to give the reviewing court sufficient reasoning for determining that he has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066; *Jamison v. Bowen*, 814 F.2d 585 (11th Cir. 1987).

   *B. Background*

Plaintiff was forty-seven years old at his administrative hearing (R. 38). He is a high school graduate and has previous work experience as a self-employed roofer (R. 39, 128). Plaintiff filed for DIB on March 20, 2009, alleging disability beginning on December 30, 2007, due to an eye injury from a hockey incident, headaches, loss of vision, cataract, an advanced degenerative condition on his hip and left knee, and depression (R. 116, 125). His listed date of last insured was December 31, 2008 (R.130). After conducting an administrative hearing, the ALJ issued an unfavorable decision denying his claim for DIB (R. 14-23). In his decision, the ALJ found at step two of the sequential analysis that Plaintiff suffered from severe impairments of osteoarthrosis of the hips, tricompartimental osteoarthrosis of the left knee, depressive disorder, and headaches; however, at step three, the ALJ concluded that none of these impairments qualified as a listed impairment in C.F.R. Part 404, Subpart P, Appendix 1 (R. 16). He then assessed Plaintiff retained the functional

3

capacity to perform light work, except that Plaintiff was limited to sitting or standing for six hours in an eight-hour workday and simple, routine, and repetitive work (R. 17).  But Plaintiff was able to understand, carry out, and remember simple instructions, relate appropriately to supervisors, coworkers, and the public, and to adjust to routine changes in the work setting (*Id.*).  At step four, the ALJ concluded that Plaintiff did not have any past relevant work as defined by the Social Security regulations; as such, the ALJ proceeded to step five (R. 21).  At step five, with the assistance of a vocational expert, the ALJ found the Plaintiff could make a successful adjustment to other work found in Wisconsin (R. 22).  Consequently, the ALJ determined that Plaintiff was not disabled (R. 22).  Plaintiff requested review, and the Appeals Council, after reviewing additional evidence, denied Plaintiff's request for review (R. 1-8).  Plaintiff, who has exhausted his administrative remedies, filed this action.

### *C. Discussion*

Plaintiff appears to challenge the ALJ's decision on three grounds including: (1) the ALJ improperly assessed Plaintiff's RFC; (2) the ALJ improperly evaluated the number of jobs available to him in the national economy at step five; and (3) new evidence demands remand.  I find each of these arguments insufficient and conclude that the ALJ's decision is supported by substantial evidence.

#### *1. RFC*

Plaintiff first argues the ALJ erred when determining Plaintiff's RFC.  Specifically, Plaintiff contends the ALJ should have included a sit/stand option as well as his limitations in bending, twisting and having to miss more than two days of work a month.  Plaintiff also

maintains the ALJ did not include all his mental limitations in his RFC. In opposition, the ALJ asserts that the limitations suggested by Plaintiff are not supported by the record. Therefore, the ALJ was not required to include them in his RFC.

The relevant focus for the ALJ in determining the Plaintiff's RFC is a consideration of all impairments and the extent to which the impairments are consistent with medical evidence. 20 C.F.R. § 416.945. The ALJ must also consider any medical opinions given by physicians, psychologists or other acceptable medical sources, which indicate the nature of a person's impairments. *Id.* The RFC determination is ultimately reserved for the ALJ. 20 C.F.R. § 416.946(c).

In reaching his RFC determination, the ALJ considered all the medical opinions given by Plaintiff's physicians and other acceptable medical sources. And while the relevant time period here was limited to one year, December 30, 2007 through December 31, 2008, the ALJ summarized chronologically and took into consideration the Plaintiff's medical treatment before, after, and during that time frame. The ALJ discussed Plaintiff's medical records from the various Veteran's Administration ("VA") hospitals. He noted Dr. Ryan Muchow's medical report in which Plaintiff complained of left hip pain (R.19, 215-16). Dr. Muchow found that although Plaintiff did have osteoarthritis and degenerative joint disease in his hip and knee joints, one did not predispose the other (*Id.*). Dr. Muchow suggested Plaintiff have possible surgical intervention to his hip but felt Plaintiff was "quite young" to have the surgery (R. 215). Instead, he recommended Plaintiff rest and to continue whatever activities he was able to do (R. 216). Dr. Muchow did not schedule a follow-up because there was no need to follow Plaintiff's conditions (*Id.*). The ALJ noted that Plaintiff

5

went through physical therapy in August and September of 2009 and that Plaintiff's physical therapists had recorded Plaintiff as having had severe hip range of motion loss, which could be a factor of Plaintiff's osteoarthritis; however, the therapists also noted that such a rapid range of motion loss would not be expected with osteoarthrosis alone (R. 20). Additional VA records in 2008 discussing Plaintiff's significant hip range of motion loss similarly questioned its etiology and noted that Plaintiff's range of motion was steadily improving (R. 313-15). In fact, at one appointment Plaintiff stated "he feels he is improving." (R. 314). Plaintiff's physicians also indicated that they had difficulty correlating Plaintiff's x-rays with Plaintiff's clinical exam of profound range of motion loss in his left hip in multiple planes (R. 320). In 2010, a VA report also revealed that Plaintiff's chronic pain was "well controlled on current therapy." (R. 616). In addition to the VA records, the ALJ discussed the records from Plaintiff's chiropractor, Mark McCann, D.O., who found Plaintiff had limited range of motion in all planes, but stated it was unusual for an individual Plaintiff's age to exhibit that degree of hypomobility (R. 19, 332-334). The ALJ gave Dr. McCann's opinions little weight because of the infrequency in which he saw him, which appeared to be at most three times, and the chiropractor did not indicate whether Plaintiff's symptoms would last 12 months or improve with treatment (R. 19). Finally, the ALJ noted that Plaintiff's records from physicians, post-alleged onset date, prescribed nothing more than physical therapy and/or medication, and there were no other opinions of medical professionals which would indicate that claimant was significantly limited in his ability to function (R. 20).

In a related argument, Plaintiff appears to argue that the ALJ erred by relying on the

6

opinion of the consulting State examiner, Dr. Pat Chan, in forming his RFC. Dr. Chan opined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand, walk, and sit six hours in an eight-hour workday, but could only occasionally stoop, kneel, and crouch due to his osteoarthritis (R. 424-25). This findings were adopted by the another State examiner, Dr. Syd Foster (R. 440).

A consulting physician's opinion normally "deserves no special weight." *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007); *see also McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (the opinions of consultative examiners are not entitled to deference "because as one-time examiners they were not treating physicians"). Nonetheless, "[t]he opinion of a consultative physician . . . is still a medical opinion deserving of consideration along with all of the other evidence." *Hindle v. Astrue*, No. 4:09cv422-RH/WCS, 2010 WL 4683996, at *15 (N.D. Fla. Oct. 6, 2010). Moreover, "[i]f the opinion of a consulting physician is consistent with other medical evidence, it is entitled to great weight." *Id.* (*citing Moncrief v. Astrue*, 300 F. App'x 879, 881 (11th Cir. 2008).

Drs. Chan's and Foster's findings are consistent with the medical evidence. And the ALJ explained why. Dr. Chan noted Plaintiff's physicians' findings of osteoarthritis in Plaintiff's knee and hip in conjunction with an antalgic gait but found the record also reflected Plaintiff's ability to walk on his heels and toes, that he was able to ride his bike 60 miles, and that by May 2009, Plaintiff's gait was within normal limits (R.19, 424-25). Dr. Chan also noted that Plaintiff had tricompartmental degenerative joint disease but was still able to walk five miles (R. 424). And although Plaintiff reported daily flairs of pain, the pain did not severely limit his routine home activities (R. 424-25). Plaintiff argues that Dr.

7

Chan's findings do not include his inability to bend and twist and that he has to have a job that allows him to stand, sit, or walk at will (Pl's Br. p. 3). Nevertheless, Plaintiff's arguments as to his limitations in his abilities are not supported by the record. For example, as the ALJ mentions in his opinion, a medical report written by Timothy Erickson, P.T. on July 28, 2008, reported that Plaintiff was able to ride his bicycle for exercise and was able to complete a 60-mile bike ride twice (R. 18). At Plaintiff's administrative hearing, the ALJ specifically asked Plaintiff about this report and his ability to ride a bike with his impairments (R. 45). Plaintiff denied this account stating he believed it occurred in 2006 (*Id.*). Yet, as the ALJ pointed out and as shown by the medical records, the Plaintiff reported to his physicians on multiple occasions his ability to ride his bike for exercise (R.18, 206, 238, 240-41, 305, 309). Additionally, despite Plaintiff's statement to the Social Security Administration that he could only walk one mile with a break every fifteen minutes, Plaintiff informed his physicians that he could walk five to ten miles, had no limitations when it came to sitting, and at least as of 2010 was still going to the gym to perform light weight training (R. 247-50, 284, 593). As such, it was proper for the ALJ to give great weight to Dr. Chan's findings related to Plaintiff's physical capabilities when determining Plaintiff's RFC. *See Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x. 848, 851 (11th Cir. 2006) (finding it proper to award great weight to state agency physician's opinion when that opinion was supported by and consistent with the record as a whole).

I also find no error in the ALJ's RFC findings as to Plaintiff's mental capabilities. The ALJ noted and gave great weight to the opinion of Dr. Michael Mandli, a state examining psychologist who concluded that Plaintiff had no medically determinable

8

impairment during the relevant time period (R. 20, 421). This evaluation was affirmed by Dr. Susan Donahoo, another state examining psychologist (R.447). The ALJ noted that despite more significant mental health allegations developing subsequent to the relevant time period and to Dr. Mandli's evaluation, those allegations were not consistent with the record. For instance, the ALJ discusses the mental impairment questionnaire completed by Heather Behm, a social worker, who opined that Plaintiff would have to miss work more than three days a month (R. 551). Ms. Behm also opined that Plaintiff had poor or no ability to maintain attention for two-hour segments, maintain regular attendance, sustain an ordinary routine, work in coordination or proximity to others, complete a normal workday without interruptions from his symptoms, and perform at a consistent pace (*Id.*). Additional, Ms. Behm found that Plaintiff had marked restrictions in activities of daily living (R. 553). The ALJ, however, rightfully gave her opinion little weight because she was not a licensed psychiatrist of psychologist, and her report was inconsistent with her treatment notes and with Plaintiff's own reports of his daily activities (R. 21). *See* 20 C.F.R. § 404.1513(a), (d) (providing that social workers are not acceptable medical sources who can provide evidence to establish an impairment; however an ALJ *may* consider their opinions as an other source)(emphasis added); *Watt v. Astrue*, No. 2:11-cv-132-FtM-SPC, 2012 WL 716635, at *11 (M.D. Fla. Mar. 2, 2012) (holding the ALJ did not err by rejecting a social worker's report of plaintiff's mental limitations as she was not considered an acceptable treating source under the regulations, and the ALJ had articulated good cause to reject her opinions). In fact, Ms. Behm's records reflect that Plaintiff was participating in coping strategies for his mental limitations like going to the gym, journaling, and calling friends (R. 509). She

described Plaintiff as very active (R. 506) and that he spends time with friends while in Florida (R. 487). Additional mental evaluations in the record support the ALJ's conclusions as well. Although Plaintiff was diagnosed with depression and avoidant personality disorder in 2009 and 2010, Plaintiff's depression was recorded as having mild depression with no problems with concentration, his depression was listed as being "currently controlled[,]" his mental status was normal, and the majority of his cognitive abilities were within normal limits (R. 221, 359, 483, 616). Accordingly, I find the ALJ's RFC finding is supported by substantial evidence.

*2. step five*

Next, Plaintiff argues the ALJ erred at step five by improperly evaluating the number of jobs available to him in the national economy. Plaintiff contends that he is a resident of Florida; however, the Social Security Administration held his administrative hearing in Wisconsin. At that hearing, the vocational expert ("VE") testified only as to jobs available in Wisconsin rather than Florida. Plaintiff maintains this was error as jobs in Florida are different than jobs in Wisconsin. The Commissioner responds that not only did Plaintiff not challenge the identification of jobs in Wisconsin at the hearing, but also he testified he lived in both Florida and Wisconsin. Therefore, Wisconsin was a proper region to consider.

At step five, "the burden temporarily shifts to the Commissioner to show that, in light of the claimant's RFC, age, education and work experience, the claimant can make an adjustment to other work that exists in significant numbers in the national economy." *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 937 (11th Cir. 2011)(citing 20 C.F.R. §§ 416.920(a)(4)(v) & (g), 416.960(c); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir.

1999)(internal quotations omitted).  This burden requires the ALJ to articulate specific jobs that Plaintiff is capable of performing which are available in significant numbers in the national economy.  *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987).  "Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country."   42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566.  An ALJ may also rely on VE testimony to assist in determining whether work exists in the national economy that Plaintiff can still perform.  *Id.*

Here, with the assistance of the VE, the ALJ concluded Plaintiff was capable of performing substantial work in the national economy.  After the ALJ presented the VE with a hypothetical incorporating Plaintiff's RFC, the VE testified that Plaintiff would still be capable of performing work classified as "light, unskilled," which included work in assembly with 17,193 jobs available in Wisconsin, sorting with 2,661 jobs available in Wisconsin, and hand packaging with 7,453 jobs available in Wisconsin  (R. 59).  Plaintiff claims these jobs are not the same as the jobs in Florida.  And because he is a resident of Florida, the VE should have determined whether jobs existed in Florida rather than Wisconsin.  Plaintiff's official residency, however, is immaterial.  The regulations require only that work exist in significant numbers either in the region where the claimant lives *or* in several other regions of the country.  *See id.*; *see also Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir.1999) ("The [Social Security] Act, its legislative history and the regulations make it clear that the test is whether work exists in the national economy, not in plaintiff's neighborhood."); *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) (noting that jobs need only exist within "the regional *or* national economy" (emphasis added)).  The ALJ

11

found job opportunities in the region where Plaintiff lived. Plaintiff testified that he spends half his time in Florida and half his time in Wisconsin (R.51, 144). In fact, he only makes the trip to Florida once a year to spend time with friends, to go to the ocean to sit on the beach, or to go out and have a drink (R. 52, 55). Plaintiff has clearly established that he lives at least half of the year in Wisconsin. Thus, I find the ALJ met his burden of showing Plaintiff capable of performing work which existed in significant numbers in the national economy.

### *3. new evidence*

The last argument Plaintiff appears to make is that new evidence attached to his memorandum demands remand. These attachments included various records from the VA such as: a record dated October 2010, indicating Plaintiff was scheduled for a functional capacity assessment; an orthopedic surgery consult note dated May 21, 2013; a telephone contact report from Plaintiff's healthcare power of attorney dated August 10, 2012; a discharge summary diagnosing Plaintiff with possible seizures and discussing Plaintiff's mental issues dated May 1, 2013; a mental health report dated April 4, 2013, diagnosing Plaintiff with various mental and health issues; mental health reports by Heather Behm dated May 2, 2008, December 29, 2009, and September 29, 2010; a depression screening dated February 24, 2006 and May 2, 2008; a summary of Plaintiff's medications; and a VA disability decision.

A claimant can request remand under sentence "when evidence not presented to the Commissioner at any stage of the administrative process requires further review." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267 (11th Cir. 2007). To prevail on a claim

of remand under sentence six, a claimant must show that (1) there is new, non-cumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative hearing. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001). "The new evidence must relate to the period on or before the date of the [ALJ's] decision." *See Russell v. Astrue*, No. 3:12-cv-160-CSC, 2012 WL 6101996, at *9 (M.D. Ala. Dec. 7, 2012) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999).

Plaintiff has not demonstrated that these records satisfy the requirements for remand. First, as pointed out by the Commissioner, the majority of the evidence attached does not relate to the time period on or before the date of the ALJ's decision. For example, the orthopedic surgery consult note, telephone contact report from Plaintiff's healthcare power of attorney, discharge summary diagnosing Plaintiff with possible seizures, and mental health report diagnosing Plaintiff with, among other things, bipolar disorder are all dated after 2012. The relevant time period was a one-year period, December 30, 2007 through December 31, 2008 (R. 16, 23). While this evidence may indicate a deterioration in Plaintiff's condition, the evidence does not relate to the specific period under review and does not aid in determining whether Plaintiff was disabled during the relevant time period. *See Wilson*, 179 F.3d at 1279; *see also Carroll v. Soc. Sec. Admin. Comm'r*, 453 F. App'x 889, 892 (11th Cir. 2011)("Evidence is irrelevant and immaterial when it relates to a time period after the eligibility determination issue."). The remaining records are equally insufficient to demand remand.

13

In his brief, Plaintiff maintains that the VA record dated October 2010 suggests that the Administration ordered Plaintiff to schedule a functional capacity assessment with the VA a week or so before the administrative hearing; however, the ALJ did not give Plaintiff enough time to present evidence from this assessment as he claims it takes longer than two weeks for the military to schedule an appointment. Regardless, this evidence is immaterial. There was no need for a further assessment of Plaintiff's functional capacity as there were already two physical RFC determinations and two psychiatric review techniques in the record, which as explained above, were supported by substantial evidence. *See Doughtry v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)(holding an ALJ is not required to order a consultative exam as long as the record contains sufficient evidence for the administrative law judge to make an informed decision). Thus, any evidence resulting from an additional functional capacity assessment is not material as it would not likely change the administrative result here.

Next, the mental health reports by Heather Behm dated December 29, 2009, and September 29, 2010, are not considered new evidence that the Commissioner failed to incorporate into the record of the administrative proceeding. These reports were all part of the record reviewed both by the ALJ and the appeals council when making their decision (R.21, 487-488, 502-509). Thus, the Plaintiff is not entitled to remand based on this evidence. *See Ingram*, 496 F.3d at 1269 (finding the district court correctly refused remand because the record showed the evidence presented by plaintiff had already been considered and incorporated into the administrative record; thus, it was not new evidence).

I further find that while the mental health report by Heather Behm dated May 2,

2008, and the depression screening reports dated February 24, 2006 and May 2, 2008, appear to be new evidence, they are immaterial. Ms. Behm's May 2008 report indicated only that Plaintiff was interested in mental health services and that there was a positive screening for depression; however, that screen also suggested only mild depression. The two additional depression screening reports dated February 24, 2006 and May 2, 2008, also identify Plaintiff as having tested positive for depression but do not provide any evaluation of how Plaintiff's depression would effect his functional capacity. These records do not provide any new insight into Plaintiff's impairments during the relevant time period and would not likely change the administrative result. While these records are similar to other records that confirm Plaintiff suffered from depression, the ALJ had already concluded Plaintiff suffered from a severe impairment of depressive disorder and considered its effect on Plaintiff's functional capacity (R. 17, 20-21). Accordingly, these additional records are not material. *See Jones v. Astrue*, No. 8:11-cv-611-T-30TBM, 2012 WL 171094, at *11 (M.D. Fla. Jan. 3, 2012)(finding new evidence taken together was not material as the ALJ had already looked at the severity of plaintiff's impairment before determining plaintiff's functional capacity). Further, these medical records were dated at least two years prior to the ALJ's decision. Plaintiff has failed to provide good cause why this evidence was not submitted at the administrative hearing. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) (denying remand as to new evidence submitted by the plaintiff because plaintiff failed to provide cause for his failure to incorporate the evidence in the record during the proceedings before the ALJ).

Plaintiff's summary of medication is equally immaterial. Plaintiff contends that the

15

medication report is probative of his severe mental impairments and their side effects. The Court acknowledges that the list of medications may provide support that Plaintiff suffers from certain symptoms from his mental impairments, but it does not provide any information as to the severity of those symptoms or how those symptoms effect Plaintiff's functional capacity. Plaintiff has also never testified and has not raised any issue in this appeal that his medications cause any side effects that may effect his ability to function. Moreover, Plaintiff's physicians have not reported that Plaintiff's medications cause him any functional limitations. Thus, the medication report is not material as it does not contradict or detract from the ALJ's RFC findings. *See Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 367 (11th Cir. 2010)(explaining that new evidence consisting of pharmacological information did not provide a basis for changing the ALJ's decision as it did not contradict the ALJ's RFC findings); *see also Buffington v. Comm'r of Soc. Sec*, No. 6:11-cv-1114-Orl-22GJK, 2012 WL 3715221, at *16 (M.D. Fla. Jul. 26, 2012) (finding the ALJ was not required to address side effects of plaintiff's medications as no doctor had opined that the side effects plaintiff suffered from were severe or disabling).

Finally, I find Plaintiff's VA rating decision does not warrant remand. Plaintiff maintains that the partial report of his VA rating decision attached to his memorandum illustrates his service in the military as well as his degenerative disc disease in his lumbar spine and left knee. It is well established that the ALJ should consider disability findings from other governmental sources. *See* 20 C.F.R. § 404.1504; *Rodriguez v. Schweiker*, 640

F.2d 682, 686 (5th Cir. 1981)[2]("A VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight."). Plaintiff's VA rating decisions were part of the administrative record (R.179-184); however, the ALJ did not discuss them in his opinion. Nonetheless, the rating decision would not change the result here. Instead, the decision actually supports the ALJ's RFC determination. The rating decision shows that the VA would not give Plaintiff a greater than ten percent evaluation for his lumbar spine impairment because although they found he had a loss in range of motion of his lower lumber spine, his forward flexion was within normal range, and he did not show that muscle spasm or guarding was severe enough to result in an abnormal gait or abnormal spinal contour. Further, as for his knee impairment, Plaintiff was evaluated at only a ten percent impairment because there was only slight lateral instability.[3] The ALJ's decision similarly found limitations in Plaintiff's ability to function because of these impairments, however, like the VA , the ALJ did not find those limitations as severely limiting as Plaintiff

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

[3] Although not attached to Plaintiff's brief, a later VA rating decision dated February 24, 2006, illustrates that the VA increased Plaintiff's disability rating of his left knee to 30%; however, that decision also supports the ALJ's RFC. For example, as pointed out by the Commissioner, that decision stated that while Plaintiff's knee problems interfered with certain activities like walking, negotiating stairs, carrying heavy loads, and work, there was also no stiffness, only occasional swelling and instability, Plaintiff did not use a brace, cane or crutches, Plaintiff was able to continue working 30 to 40 hours per week at his roofing company in a more managerial role, Plaintiff could walk at least five miles, and could stand ten to twenty minutes (R. 183). In addition, while Plaintiff was not able to run, he was not limited in the amount of time he could sit (*Id.*).

alleged. Consequently, I find the VA's disability rating does not require remand. *See Bailey v. Astrue*, No. 3:09-cv-3830-J-JRK, 2010 WL 3220302, at *13 (M.D. Fla. Aug. 13, 2010) (concluding that despite the ALJ's failure to discuss plaintiff's VA rating decision, "remanding the case for the ALJ to consider the evidence from the VA would be an exercise in futility because the evidence does not actually support a finding of disability and would not change the result.").

*D.  Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED and judgment be entered in favor of the Commissioner.

IT IS SO REPORTED in Tampa, Florida on January 31, 2013.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).

18